[Cite as *In re J.H.*, 2020-Ohio-218.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.H., R.H., K.H.

Court of Appeals No. L-19-1168

Trial Court No. JC 18266487

**DECISION AND JUDGMENT**

Decided: January 24, 2020

* * * * *

Christopher S. Clark, for appellant.

Kevin J. Ankney, for appellee.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} Appellant, J.H. ("father"), appeals the judgment of the Lucas County Court of Common Pleas, Juvenile Division, granting a motion for permanent custody filed by appellee, Lucas County Children Services ("LCCS"), thereby terminating his parental

rights with respect to his children, J.H., R.H., and K.H. (collectively referred to as "the children").[1]  Finding no error below, we affirm.

## A. Facts and Procedural Background

{¶ 2} On January 5, 2018, LCCS filed a complaint alleging that the children were dependent based primarily on issues concerning a lack of adequate housing.  In its complaint, LCCS sought an award terminating father's parental rights and granting LCCS permanent custody of the children.  The children were subsequently adjudicated dependent on March 23, 2018.

{¶ 3} On June 13, 2018, the juvenile court returned legal custody to father after learning that father had acquired appropriate housing, had been compliant with counseling, and was attending appointments for the children.

{¶ 4} On October 3, 2018, LCCS filed a "Motion to Change Disposition" in which an emergency hearing was requested.  By this time, father's housing situation had deteriorated, father was no longer consistently attending counseling, and father had unexpectedly left the state with the children.  Consequently, the juvenile court granted interim temporary custody of the children to LCCS, and subsequently granted full temporary custody to LCCS on January 14, 2019.  Two weeks later, LCCS filed a motion for permanent custody of the children.

---

[1] The children's mother, E.H., did not file a notice of appeal and is therefore not a party to this proceeding.

2.

{¶ 5} On June 17, 2019, the matter proceeded to trial on LCCS's motion for permanent custody. Two witnesses testified at trial. The first witness was LCCS caseworker Alyssa Jennings, who testified that this family was first referred to LCCS in December 2014. After its initial investigation, LCCS sought removal of the children from the family home due to a lack of housing and the parents' failure to meet the children's medical needs. The children were removed from the family home in July 2015, and case plan services were offered to father at that time, with the goal of reunification of the family.

{¶ 6} According to Jennings, the case plan services offered to father included mental health services, parenting services, and stable housing. Jennings testified that father successfully completed his parenting services in 2016. As to the mental health services, Jennings testified that father initially engaged in his mental health case plan services. However, as time progressed father's attendance became intermittent. Regarding housing, Jennings stated that LCCS previously filed a motion for permanent custody in January 2018 due to father's inability to obtain stable housing. By the time the matter came before the juvenile court for a hearing, however, father had successfully obtained housing. Consequently, LCCS moved to continue the matter for another hearing on June 13, 2018, in an effort to monitor father's ability to maintain stability with respect to housing.

{¶ 7} At the June 13 hearing, it was determined that father was compliant with mental health counseling and had successfully maintained stable housing. In light of

3.

these facts, the children were reunified with father and LCCS was granted protective supervision, which, according to Jennings, meant that she would visit the children a minimum of once per month.

{¶ 8} During Jennings' first visit to the family home, she observed that the residence appeared to be clean, and she testified that she had no concerns with the children's placement there. However, Jennings testified that the conditions of the home quickly deteriorated over the next two months. Specifically, Jennings stated that the home

> became more and more unkempt. There was more and more items observed in the home. The home had toys strewn everywhere, mattresses, clothing. There was food on the floor. There was garbage in the home. At one point there was a brown substance that was observed smeared all over the floor and up the walls. So it quickly went downhill.

{¶ 9} Following her August 20, 2018 visit to the family home, Jennings informed mother that she would be back on August 23, 2018, and that she would be bringing the children's guardian ad litem along for the visit. By the time Jennings returned to the home on August 23, 2018, the family had departed the residence and Jennings was unable to locate the family. Jennings did not hear from the family again until sometime in mid-September, when mother left Jennings a voicemail stating that she had taken the family to Valparaiso, Texas, to stay with a friend. According to Jennings, mother reported that

4.

father was "driving for work" at the time, but was also planning to locate to Texas with the family.

{¶ 10} In early October 2018, Jennings received notification that the family had returned to Toledo. According to Jennings, the family did not establish housing upon their return to Toledo. Instead, the family took up residence at Family House, where they remained until they were expelled in early March 2019 for reporting too much income. After they left Family House, the family resided at hotels. Jennings testified that father obtained housing between March 2018 and September 2018, but did not have housing at any other point during the four-year course of this case. Moreover, Jennings stated that father was not consistent with his mental health services after he returned from Texas.

{¶ 11} Ultimately, Jennings stated that "dad just doesn't really engage. He doesn't seem to in my conversations. He hasn't really wanted or seemed motivated to change his situation. They both have – seem to have an understanding of what is going on, but little motivation to change the situation."

{¶ 12} After Jennings concluded her testimony, LCCS rested. Thereafter, the children's guardian ad litem, Amy Stoner, called herself to the stand. At the outset, Stoner shared her concern that father seemed apathetic and lacked any involvement in this case. According to Stoner, father was unable to "comprehend what is required. He's also not capable of parenting these three children."

{¶ 13} Stoner indicated that her investigation revealed that father did not have stable and secure housing, and she stated that father's housing situation was inconsistent

5.

during the course of these proceedings. Regarding the housing issue, Stoner stated: "[Mother and father] haven't had their own independent housing except for a few months last summer. Other than that, they've been at hotels, friends' houses, and the shelter for a quick period of time."

{¶ 14} When asked for her recommendation with regard to the children, Stoner recommended a grant of permanent custody to LCCS. She reasoned that permanent custody was in the children's best interests because

> these parents have been involved with [LCCS] for four years. And recognizing that's a long period of time, [LCCS] and myself worked with the parents to attempt to get all their services in place and also to secure housing, which is what we had in place for a short period of time last year. And then that quickly fell apart. And in general we didn't want to remove kids simply because they didn't have housing. But that is, in essence, where we are again that they just don't have any stability or security. Even though the parents are employed, they're not following through with their services, and it just is of grave concern if the children go home.

{¶ 15} At the close of the evidence, the juvenile court found that the children could not be returned to father within a reasonable time under R.C. 2151.414(B)(1)(a). In support, the juvenile court, under R.C. 2151.414(E)(1), found that father failed to significantly improve the conditions that caused the children to be removed from the family home. Under R.C. 2151.414(E)(2), the court concluded that father's mental

6.

illness was so severe that it makes father unable to provide a permanent placement for the children in the foreseeable future. Under R.C. 2151.414(E)(4), the court found that father had demonstrated a lack of commitment toward the children by failing to regularly visit them when he could have done so. Finally, the court determined that father's failure to appear for trial was relevant under R.C. 2151.414(E)(16).

{¶ 16} In addition to its determination that the children could not be returned to father within a reasonable time, the court found that an award of permanent custody to LCCS was in the children's best interests under R.C. 2151.414(D)(1). In particular, the court noted that the children had a "very good" relationship with their out of home providers, who were meeting the children's significant needs. The court also found the children needed a legally secure, permanent placement, and found that a grant of permanent custody to LCCS was required to meet that need. The court went on to state its determination that LCCS had made reasonable efforts to prevent the continued need for the children to be placed outside the family home, noting the fact that LCCS had previously attempted reunification by returning the children to the family home.

{¶ 17} Ten days after trial, the juvenile court issued its judgment entry reciting the foregoing findings and granting LCCS's motion for permanent custody. Thereafter, father filed his timely notice of appeal.

7.

## B.  Assignments of Error

**{¶ 18}** On appeal, father presents the following assignment of error:

The trial court erred in finding that it is in the children's best interest to award permanent custody of the children to Lucas County Children Services ("LCCS").

## II.  Analysis

**{¶ 19}** In his sole assignment of error, father argues that the juvenile court erred in finding that an award of permanent custody to LCCS was in the children's best interest. In essence, father is arguing that the juvenile court's decision was against the manifest weight of the evidence.

**{¶ 20}** "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28.  In conducting a review on manifest weight, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17.

8.

**{¶ 21}** We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, fn. 3, 461 N.E.2d 1273 (1984).

**{¶ 22}** Here, the juvenile court concluded that permanent custody to LCCS was warranted based on its finding that the children could not be returned to father within a reasonable time under R.C. 2151.414(B)(1)(a), which provides:

> (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies

9.

for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 23} Concerning the determination as to whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents, R.C. 2151.414(E) provides, in relevant part:

If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have

substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(16) Any other factor the court considers relevant.

{¶ 24} In the case sub judice, the juvenile court found that several factors under R.C. 2151.414(E) were applicable to father in this case, including father's failure to significantly improve the conditions that caused the children to be removed from the family home under R.C. 2151.414(E)(1), father's ongoing mental illness issues that made him unable to provide a permanent placement for the children in the foreseeable future under R.C. 2151.414(E)(2), father's lack of commitment toward the children under R.C. 2151.414(E)(4), and father's failure to appear for trial, which the court deemed relevant under R.C. 2151.414(E)(16).

{¶ 25} Father does not specifically contest the juvenile court's findings under R.C. 2151.414(E)(1), (2), and (16). Father contests the trial court's determination that he has demonstrated a lack of commitment to the children under R.C. 2151.414(E)(4), referencing his prior efforts to obtain housing and comply with his case plan services, which ultimately led to his reunification with the children.

{¶ 26} Having independently reviewed the record in its entirety, we find that father's argument concerning his prior efforts is unavailing because the events that have transpired since the June 2018 reunification have demonstrated father's failure to continue to comply with case plan services and an inability or unwillingness to obtain adequate housing for the children. Moreover, our review of the record reveals that the juvenile court's findings under the remaining sections of R.C. 2151.414(E) are supported by clear and convincing evidence. Under R.C. 2151.414(E), the juvenile court was required to enter a finding that the children could not be placed with father within a

12.

reasonable time or should not be placed with father after it found the factors under R.C. 2151.414(E)(1), (2), (4), and (16) to be applicable.

{¶ 27} In addition to its determination that the children could not be returned to father within a reasonable time, the court also found that an award of permanent custody to LCCS was in the children's best interests under R.C. 2151.414(D)(1), which provides, in relevant part:

> (D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> * * *
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency * * *.

{¶ 28} In its entry, the juvenile court found that the children had a good relationship with their foster care providers, and also noted that the children had significant needs that were being met in foster care. The testimony provided at trial

13.

supports this finding. Further, the record supports the trial court's determination that a grant of permanent custody to LCCS was required to address the needs of the children for a legally secure, permanent placement.

{¶ 29} In his brief, father does not advance an argument to contradict the trial court's findings regarding the best interests of the children under R.C. 2151.414(D)(1). Instead, father contends that LCCS "did not exercise reasonable efforts to prevent permanent removal of the children from the home." The issue in a reasonable-efforts determination is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard in R.C. 2151.414(E)(1). *In re A.B.*, 6th Dist. Lucas Nos. L-12-1069 and L-12-1081, 2012-Ohio-4632, ¶ 25. "A 'reasonable effort' is an 'honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage.'" *Id.*, quoting *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011 (12th Dist.1992).

{¶ 30} In its entry, the juvenile court specifically found that LCCS made reasonable efforts, culminating in the reunification of father with the children in June 2018. Unfortunately, the reunification was short-lived due to father's deteriorating housing situation and his failure to comply with case plan services such as mental health counseling. Both Jennings and Stoner testified to father's indifference toward his case plan services, and his unwillingness to engage. On this record, father's claim that LCCS did not make reasonable efforts to prevent permanent removal of the children from the home is untenable.

14.

{¶ 31} The testimony provided at the hearing on LCCS's motion for permanent custody establishes that father has failed to address the issues that prompted the removal of the children from the family home, as illustrated by father's failure to comply with case plan services that were offered to him, and his inability to secure adequate and stable housing. In sum, we find that the juvenile court's finding that the children could not be returned to father within a reasonable time and that an award of permanent custody to LCCS was in the children's best interests was not against the manifest weight of the evidence. Consequently, we find that the juvenile court did not err in granting LCCS's motion for permanent custody.

{¶ 32} Accordingly, father's sole assignment of error is not well-taken.

### III. Conclusion

{¶ 33} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Christine E. Mayle, J. _____

_____
JUDGE

Gene A. Zmuda, P.J. _____
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.