[Cite as *In re J.H.*, 2020-Ohio-2658.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.H.

Court of Appeals No. L-19-1295

Trial Court No. JC 19275139

**DECISION AND JUDGMENT**

Decided: April 24, 2020

* * * * *

Christopher S. Clark, for appellant.

Janna E. Waltz and Jill E. Wolff, for appellee.

* * * * *

**ZMUDA, P.J.**

{¶ 1} This matter is before the court on appeal from the judgment of the Lucas County Court of Common Pleas, Juvenile Division, awarding permanent custody of the minor child, J.H. to Lucas County Children Services ("LCCC"), and terminating the parental rights of appellant-mother, K.K.[1]  For the reasons that follow, we affirm.

---

[1] The juvenile court also terminated the parental rights of father, D.H.  Father is not a party to this appeal and we will not address any findings, relative to him.

## I. Facts and Procedural Background

{¶ 2} J.H. was born on June 10, 2017, while mother had an open case with LCCS regarding an older sibling. The present appeal is from the second case in dependency filed for J.H. by LCCS.

{¶ 3} In the months leading up to the complaint, the juvenile court awarded temporary custody of J.H. to LCCS after a shelter care hearing on July 3, 2018, and on November 15, 2018, the court extended temporary custody. On May 16, 2019, mother consented to awarding legal custody of J.H. to a maternal aunt. However, on May 31, 2019, the aunt indicated she could not care for J.H., and J.H. was placed in foster care.

{¶ 4} LCCS filed a complaint in dependency for J.H. on June 6, 2019, and the court awarded interim temporary custody to LCCS after a shelter care hearing that same day. The juvenile court appointed a guardian ad litem to represent J.H., as well as counsel for both mother and father. On July 25, 2019, the court held adjudication and disposition hearings, with J.H. adjudicated dependent and temporary custody of J.H. awarded to LCCS. LCCS prepared a case plan, and while mother reported completion of domestic violence services, she delayed completing her assessment and declined services with the exception of a single counseling session.

{¶ 5} On August 15, 2019, LCCS filed a motion for permanent custody. LCCS argued that termination of parental rights and an award of permanent custody to LCCS was in J.H.'s best interest, listing mother's lengthy history with LCCS and her inability to provide a suitable, stable home for J.H. Specifically, LCCS noted that mother had

2.

custody of J.H. for only a brief period between May 17 and July 3, 2018, and J.H. had spent the majority of his life in temporary placements or with his aunt, who was unable to care for him.

{¶ 6} On November 18, 2019, the matter proceeded to trial on the motion for permanent custody, with counsel for mother and father present, along with J.H.'s guardian ad litem and counsel for the LCCS with the LCCS caseworker assigned. Neither mother nor father appeared, with counsel for father indicating no contact despite attempts to communicate with him. Counsel for mother indicated two contacts, despite numerous attempts to communicate with her. The juvenile court determined that father and mother waived their right to counsel, and permitted counsel to withdraw.

{¶ 7} Danielle Flowers, LCCS caseworker, testified that she was the ongoing caseworker, and first began working with mother in investigating reports of physical abuse concerning J.H.'s sibling, shortly before J.H.'s birth. LCCS filed a complaint for J.H.'s sibling, and after J.H. was born, LCCS filed a complaint for J.H. Relative to that first case, Flowers indicated that mother participated in services and assessments, while father declined to participate and moved away, ceasing all contact with J.H.[2] In the first proceeding, LCCS filed for reunification for mother with J.H. and his older sibling.[3]

_____

[2] At the time of trial, LCCS had no current address for J.H.'s father. He moved from Ohio to Tennessee shortly after J.H.'s birth, but may have relocated to Arizona. LCCS reached out to him through J.H.'s paternal grandmother, but received no response.

[3] Custody for J.H.'s older sibling was separately adjudicated, and is not part of the present appeal.

3.

{¶ 8} Shortly after mother and J.H. were reunited, mother reported new incidents of domestic violence with her new boyfriend, and seemed to acknowledge the danger her new boyfriend presented in the home. After an unannounced home visit, however, it was clear mother continued to live with her new boyfriend, and she refused to prevent him from having contact with J.H. Flowers testified that mother was, once more, offered services, but generally declined to participate. Mother completed an assessment, but declined the recommended services. Of concern were mother's untreated mental health issues and her refusal to cooperate with the agency's efforts to investigate the new boyfriend's identity and background. Her living situation was also unclear, with Flowers indicating she could not determine who lived with mother in the home.

{¶ 9} On the other hand, Flowers indicated that J.H. was doing well in foster care, had bonded with his foster parents, and benefitted from the structured environment they provided, as well as speech therapy through Help Me Grow. While acknowledging that mother did visit J.H. regularly, Flowers testified that mother had a pattern of failing to follow through, and her lifestyle choices caused concern. As part of mother's pattern, Flowers noted that she lost custody of two other siblings in Michigan, and had no contact with those children, and J.H.'s older sibling was in the legal custody of a non-relative. Flowers stated that permanent custody for LCCS would be in J.H.'s best interest.

{¶ 10} Next, Emily McGill, J.H.'s guardian ad litem, testified. McGill testified that she was appointed to J.H. in June 2019, and conducted an independent investigation on his behalf, culminating in the written report submitted to the court and admitted as an

4.

exhibit. McGill testified that J.H. "has been in custody basically his whole life," and she had concerns regarding mother's mental health and her attitude toward treatment. McGill noted that mother does not take prescribed medications for her diagnosed bipolar disorder, and when she participates in assessments, does not provide complete and truthful information regarding her mental health history. She also noted the uncertainty of mother's living arrangement, with no way to verify the identity for mother's new boyfriend without cooperation in providing information necessary for a background check.

{¶ 11} As to J.H.'s foster placement, McGill indicated he is doing well, and his foster parents are meeting all of his needs. J.H., furthermore, appeared to be on track developmentally except for some delayed speech. McGill testified that J.H. is bonding with his foster parents, who expressed a wish to adopt him. Based on her investigation, McGill recommended permanent custody for LCCS would be in J.H.'s best interest.

{¶ 12} After reviewing the testimony and the written report, the juvenile court found by clear and convincing evidence that permanent custody to LCCS was in J.H.'s best interests. The juvenile court found that J.H. could not be returned to mother within a reasonable time, pursuant to R.C. 2151.414(B)(1)(a), and found clear and convincing evidence establishing applicability of R.C. 2151.414(E)(1), (4), (11), and (16).[4] As to

---

[4] As to father, the juvenile court also found R.C. 2151.414(E)(10) applied, finding father abandoned J.H.

5.

reasonable efforts to prevent removal, R.C. 2151.414(E)(1), the juvenile court determined:

> The Court further finds that LCCS made reasonable efforts to prevent the need for removal of the child, and the continued need for removal from her home, however, such efforts were unsuccessful. Said efforts included case plan management, visitation, and referrals to assessments, mental health treatment, substance abuse services and domestic violence services. The Court finds that although these services were offered, the conditions that caused the initial removal of the child from the parent's care have not been remedied and the child cannot be returned to either parent within a reasonable period of time.

As to the remaining factors, the juvenile court noted mother's lack of commitment towards J.H. in failing to address ongoing and unresolved concerns for domestic violence, substance abuse, and mental health, and failing to complete case plan services under R.C. 2151.414(E)(4). Additionally, the juvenile court noted mother's prior loss of permanent custody for two of J.H.'s siblings in the state of Michigan, with no evidence presented demonstrating any subsequent change to her situation under R.C. 2151.414(E)(11). Finally, the juvenile court considered mother's failure to appear for trial as relevant under R.C. 2151.414(E)(16). In considering the best interest of J.H. pursuant to R.C. 2151.414(D)(1), the juvenile court noted that J.H. had been removed

6.

from mother's custody shortly after birth, had been in nine placements since birth, and was doing well in his current placement, a prospective adoptive home.

{¶ 13} On December 10, 2019, the juvenile court granted the motion for permanent custody in a written entry, reciting its findings and awarding permanent custody to LCCS. On December 16, 2019, mother filed a timely appeal.

## II. Assignment of Error

{¶ 14} Mother now appeals the judgment of the juvenile court, asserting the following assignment of error:

> The trial court erred in finding that appellee made reasonable efforts to unify the child with the appellant-mother and that it is in the best interest of the child to terminate appellant-mother's parental rights and to award permanent custody of the child to Lucas County Children Services ("LCCS").

## III. Analysis

{¶ 15} In her sole assignment of error, mother argues termination of her parental rights were not in J.H.'s best interest, because LCCS failed to sustain its burden of demonstrating reasonable efforts to prevent removal or to work toward return of J.H. to her custody, citing R.C. 2151.419(A). "By its terms, R.C. 2151.419 applies only at hearings held pursuant to R.C. 2151.28, 2151.31(E), 2151.314, 2151.33, or 2151.353." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 41, citing R.C. 2151.419(A)(1). A motion for permanent custody is governed by R.C. 2151.414, which

7.

"sets forth the procedures a juvenile court must follow and the findings it must make before granting a motion filed pursuant to R.C. 2151.413." *In re C.F.* at ¶ 22, quoting *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 9.

{¶ 16} Before a juvenile court may terminate parental rights and award permanent custody to a public services agency under R.C. 2151.414, the court must find, by clear and convincing evidence that one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(e) apply, and that permanent custody is in the best interests of the child. R.C. 2151.414(B)(1). *See In re C.F.* at ¶ 23-27, quoting R.C. 2141.414(B)(1). Clear and convincing evidence is defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 17} Where, as in this case, the juvenile court determines that the child cannot be placed with either parent now or in the foreseeable future, as provided under R.C. 2151.414(B)(1)(a), it must also consider the child's best interests and whether any of the factors enumerated in R.C. 2151.414(E) are present. *In re Za.G., Ze.G.*, 6th Dist. Williams No. WM-19-019, 2020-Ohio-405, ¶ 98. Here, the juvenile court determined the following provisions of R.C. 2151.414(E) applied:

8.

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to

those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

* * *

(16) Any other factor the court considers relevant.

{¶ 18} Mother appeals the juvenile court's judgment, arguing the evidence did not support a finding that LCCS made reasonable efforts to unify her with J.H., challenging only one basis stated by the juvenile court in support of termination of her parental rights. We review the judgment under a manifest weight of the evidence standard. *In re K.L.*, 6th Dist. Lucas No. L-17-1201 and L-17-1210, 2017-Ohio-9003, ¶ 24; *see also In re J.H., R.H., K.H.*, 6th Dist. Lucas No. L-19-1168, 2020-Ohio-218, ¶ 20 (additional citations omitted).

{¶ 19} In reviewing the decision, we consider the evidence and all reasonable inferences, the credibility of the witnesses, and in resolving any conflicts in the evidence, we determine whether the juvenile court lost its way, requiring reversal and new hearing in order to remedy a manifest miscarriage of justice. *In re K.L.* at ¶ 24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20.

10.

{¶ 20} Mother's sole challenge to the judgment concerns the efforts of LCCS to prevent removal, pursuant to R.C. 2151.419(A). While R.C. 2151.419(A) does not govern a motion for permanent custody, to the extent a court relies on R.C. 2151.414(E)(1) in deciding the motion, "the court must examine the 'reasonable case planning and diligent efforts by the agency to assist the parents' when considering whether the child cannot or should not be placed with the parent within a reasonable time." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 42, quoting R.C. 2151.414(E)(1). "The issue in a reasonable-efforts determination is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard in R.C. 2151.414(E)(1)." *In re J.H., R.H., K.H.*, 6th Dist. Lucas No. L-19-1168, 2020-Ohio-218, ¶ 29, citing *In re A.B.*, 6th Dist. Lucas Nos. L-12-1069 and L-12-1081, 2012-Ohio-4632, ¶ 25.

{¶ 21} Mother does not dispute the reasonable efforts of LCCS in offering case planning, noted by the juvenile court as including "case plan management, visitation, and referrals to assessments, mental health treatment, substance abuse services and domestic violence services." Instead, mother argues she substantially complied with her case plan, primarily citing past efforts that led to brief reunification in May 2018. Her argument of substantial compliance, as it relates to conduct occurring after LCCS filed the June 6, 2019 complaint in dependency, lacks any support in the record.

{¶ 22} The evidence demonstrates that, despite completing services in 2018, mother continued to expose J.H. to domestic violence, failed to maintain stable housing,

11.

and failed to address mental health issues. Mother also failed to complete case plan services after the most recent incident of domestic violence, with her participation hindered by inaccurate reporting of mental health conditions and her refusal of treatment beyond a single counseling session. The juvenile court specifically noted that, while mother completed some services, including domestic violence services, "new incidents occurred after completion of these services and mother has not demonstrated that she can protect the child from domestically violent men." Additionally, while not raised by mother relative to the additional findings under R.C. 2151.414(E), our review of the record demonstrates clear and convincing evidence in support of these additional findings. Considering these separate findings, there is clear and convincing evidence of mother's lack of commitment to J.H. and her failure to appear for trial, with no evidence demonstrating that, despite her prior loss of custody for J.H.'s siblings, she is now able to provide adequate care.

{¶ 23} As to the "best interests of the child" determination required under R.C. 2151.414(D)(1), the juvenile court considered J.H.'s nine placements since his birth in 2017, the bond established between J.H. and his foster parents, and his progress while in his present placement, a potentially adoptive home that meets J.H.'s needs. In her brief, mother does not challenge the juvenile court's determinations regarding the best interests of J.H., and we find the evidence supports these determinations. Accordingly, we find no error in the juvenile court's award of permanent custody to LCCS, and mother's sole assignment of error is not well-taken.

12.

## IV. Conclusion

**{¶ 24}** For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                                         _____
JUDGE

Arlene Singer, J.                  

Gene A. Zmuda, P.J.                                _____
CONCUR.                                                   JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.