[Cite as *In re A.B.*, 2018-Ohio-4206.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


In re A.B., M.B., J.B., A.P.

Court of Appeals No. L-18-1136

Trial Court No. JC 17260731


**DECISION AND JUDGMENT**

Decided: October 17, 2018

* * * * *

Christopher S. Clark, for appellant.

Angela Y. Russell, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, D.B., appeals from the May 18, 2018 judgment of the Lucas County Court of Common Pleas, Juvenile Division, which denied her motion, as a paternal aunt to A.B., M.B., J.B., and A.P., to obtain legal custody of these children who were previously found to be neglected and dependent. For the reasons which follow, we affirm.

{¶ 2} On appeal, appellant asserts a single assignment of error:

IN DENYING THE PATERNAL AUNT'S MOTION FOR

CUSTODY, THE TRIAL COURT ABUSED ITS DISCRETION AS A

PREPONDERANCE OF THE EVIDENCE DEMONSTRATES THAT

AWARDING CUSTODY TO APPELLANT IS IN THE BEST INTEREST

OF THE CHILDREN.

{¶ 3} After a child has been adjudicated abused, neglected, or dependent, the juvenile court may award legal custody to any individual who has filed a motion for legal custody, pursuant to R.C. 2151.353(A)(3), prior to the disposition hearing and signs a statement of understanding. In the case before us, Lucas County Children Services ("LCCS") moved for permanent custody pursuant to R.C. 2151.415(A) and appellant moved for legal custody pursuant to R.C. 2151.353(A)(3) and filed a motion to intervene.

{¶ 4} Before the hearing began, the juvenile court denied appellant's motion to intervene finding that she never acted in loco parentis to the children. The court granted appellant the opportunity to present testimony and be cross-examined on her motion for legal custody. Ultimately, the trial court denied the motion for legal custody and appellant appealed only the denial of her motion for legal custody.

{¶ 5} We first address the argument of LCCS that appellant lacks standing to appeal. The jurisdiction of the juvenile court to consider the motion for legal custody was clearly established pursuant to R.C. 2151.353. Standing to appeal a final order of the juvenile court is controlled by R.C. 2501.02 and the common law principal that an appeal

2.

can be filed only by "'a party aggrieved by the final order appealed from. Appeals are not allowed for the purpose of settling abstract questions, but only to correct errors injuriously affecting the appellant.'" *State ex rel. Winfree v. McDonald*, 147 Ohio St.3d 428, 2016-Ohio-8098, 66 N.E.3d 739, ¶ 8, citing *State ex rel. Gabriel v. Youngstown*, 75 Ohio St.3d 618, 619, 665 N.E.2d 209 (1996), quoting *Ohio Contract Carriers Assn. v. Pub. Util. Comm.*, 140 Ohio St. 160, 42 N.E.2d 758 (1942), syllabus. Therefore, we have held that a nonparent who never moved to intervene nor moved for legal custody cannot appeal a permanent custody award. *In re Titionna K.*, 6th Dist. Lucas No. L-06-1232, 2007-Ohio-1861, ¶ 5. However, the unique issue in this case is whether the nonparent who filed both a motion to intervene and a motion for legal custody, both of which were denied, has standing to appeal the denial of the motion for legal custody.

{¶ 6} Generally, the parties to a R.C. 2151.27(A) abuse, neglect, or dependency action are the child, the parents, the state, and the guardian ad litem. Juv.R. 2(Y). The juvenile court has the discretion to allow any other individuals to participate if their "presence is necessary to fully litigate an issue presented." *In re R.V.*, 6th Dist. Lucas Nos. L-10-1278, L-10-1301, 2011-Ohio-1837, ¶ 44. Furthermore, the juvenile court is required to permit an individual to intervene "when a statute of this state confers an unconditional right to intervene" or "the applicant claims an interest relating to * * * the subject of the action," Civ.R. 24(A), and has discretion to allow any other party to intervene. Civ.R. 24(B).

3.

{¶ 7} At common law, grandparents had no constitutional right to participate in a custody action. *In re Schmidt*, 25 Ohio St.3d 331, 336, 496 N.E.2d 952 (1986). In dicta, in a concurring opinion, Justice Celebrezze indicated that grandparents had no right to intervene pursuant to R.C. Chapter 2151 unless they had acted in loco parentis to their grandchildren. *Id.* at 337-338. We applied this reasoning in a permanent custody action to hold that the denial of a grandparent's motion to intervene was not an abuse of discretion where the grandparent had never stood in loco parentis to their grandchild. *In re R.V.* at ¶ 45. This holding became the basis for the denial of the motion to intervene in the case before us. However, the juvenile court also entertained appellant's motion for legal custody.

{¶ 8} The law is unclear whether a nonparent, permitted to file a motion for legal custody as a nonparty under R.C. 2151.353(A)(3), must also move to intervene to protect their right to participate in the action or appeal the denial of their motion for legal custody. One court has implied that the nonparent must be made a party for the trial court to consider a motion for legal custody. *In re A.G.*, 9th Dist. Summit No. 28861, 2018-Ohio-2835, ¶ 19. Several courts have held that the juvenile court implicitly makes the nonparent a party by considering a motion for legal custody. *In re T.N.W.*, 8th Dist. Cuyahoga No. 89815, 2008-Ohio-1088, ¶ 7; *In re P. P.*, 2d Dist. Montgomery No. 19582, 2003-Ohio-1051, ¶ 21; *In re Travis Children*, 80 Ohio App.3d 620, 625-626, 609 N.E.2d 1356 (5th Dist.1992). Yet another court allowed the motion for legal custody to be maintained but held that the nonparent only had standing to appeal the denial of the

4.

motion to intervene.  *In re D.S.*, 9th Dist. Summit No. 24554, 2009-Ohio-4658, ¶ 13.  We have held that the failure to file a written motion for legal custody pursuant to the statute limits the nonparent's right of appeal solely to the issue of whether the trial court erred by ruling on the motion without an evidentiary hearing.  *In re R.V.*, 6th Dist. Lucas Nos. L-10-1278, L-10-1301, 2011-Ohio-1837, at ¶ 52.

{¶ 9} We conclude that to fully participate in the action and challenge the permanent custody award, a nonparent would have to have been made a party to the action.  *In re J.B.*, 8th Dist. Cuyahoga No. 103521, 2016-Ohio-5513, ¶ 45-50.  However, the nonparent whose motion to intervene was denied has a right to appeal the denial of that motion.  *In re Kei'Andre P.*, 6th Dist. Lucas No. L-00-1203, 2001 Ohio App. LEXIS 532, *8-9 (Feb. 16, 2001) (the denial of a motion to intervene is an exception to the general rule that only parties to an action have standing to appeal.)  *Accord In re Guardianship of Sweeney*, 8th Dist. Cuyahoga No. 103285, 2016-Ohio-3260, ¶ 19-21 (a party whose motion to intervene in a guardianship action was denied has standing to appeal because she had an interest in the proceeding and was prejudiced by the denial of her motion).  Furthermore, for the limited purpose of appealing the denial of a R.C. 2151.353(A)(3) motion for legal custody, we find filing such a motion gives rise to another exception to the general rule that a "party" status is necessary to appeal.  *Compare In re R.V.* (an oral motion for legal custody does not give rise to standing to appeal).  Otherwise, the denial of appellant's motion to intervene while addressing the

nonparent's motion for legal custody accomplished nothing more than cutting off appellant's right to appeal the denial of her motion for legal custody.

{¶ 10} Therefore, we will consider appellant's sole assignment of error. When an agency moves for legal custody pursuant to R.C. 2151.415(A)(3), the juvenile court must base its order of disposition upon "the best interest of the child as supported by the evidence presented at the dispositional hearing." R.C. 2151.415(B). Likewise, R.C. 2151.415(F) and 2151.42(B), require the court to consider the best interest of a child before modifying or terminating an award of legal custody. However, when an individual moves for legal custody pursuant to R.C. 2151.353(A)(3), that statute does not require the juvenile court to find the award of legal custody is in the best interest of the child. *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 15-16. However, the underlying consideration for all dispositional determinations involving custody of a child made by the juvenile court are based upon consideration of the best interest of a child and the constitutional and other legal rights of the parents. R.C. 2151.01; *In re Cunningham*, 59 Ohio St.2d 100, 108, 391 N.E.2d 1034 (1979); *Linger v. Weiss*, 57 Ohio St.2d 97, 101, 386 N.E.2d 1354 (1979), fn. 7; *In re Tilton*, 161 Ohio St. 571, 575, 120 N.E.2d 445 (1954).

{¶ 11} In dispositional hearings involving motions for legal custody by nonparents, appellate courts have often held that the juvenile court must consider the best interest factors of either R.C. 2151.414(D) (applicable only to motions of an agency for permanent custody or a permanent living arrangement) or R.C. 3109.04(F) (as applied to

6.

custody disputes arising outside the domestic relations domain as habeas corpus actions or R.C. 2151.23(A)(2) actions between parents and nonparents) under a preponderance of the evidence standard. *In re G.M.* at ¶ 15 (citations omitted); *In re B.H. P.H.*, 6th Dist. Lucas Nos. L-17-1126, L-17-1127, 2018-Ohio-1238, ¶ 29; *In re K.V.*, 6th Dist. Lucas No. L-11-1087, 2012-Ohio-190, ¶ 19. However, the General Assembly did not specify the factors to be considered for legal custody as it did for other dispositional orders. The absence of a specific requirement to consider statutory factors of best interest may be due to the fact that legal custody is not as extreme as an award of permanent custody. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 17. Therefore, we must presume the juvenile court is free to consider any best interest factors it deems appropriate. *In re G.M.* at ¶ 15-16. Furthermore, those findings must be supported by a preponderance of the evidence admitted at the dispositional hearing. *In re B.L.*, 6th Dist. Lucas No. L-15-1030, 2016-Ohio-738, ¶ 7.

{¶ 12} On appeal, an appellate court will not reverse the dispositional award unless the juvenile court abused its discretion. *In re K.Q.*, 11th Dist. Ashtabula No. 2017-A-0060, 2018-Ohio-906, ¶ 14; *In re B.H., P.H.* at ¶ 28-29. An abuse of discretion requires that we find the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 13} In the case before us, the following evidence was presented at the dispositional hearing. The initial caseworker testified LCCS received a referral regarding

7.

the family in late 2016 based upon allegations of multiple concerns regarding the children and their home environment, including inadequate food and clothing for the children, the children were dirty, the parents were abusing substances, and the children were sexually acting out upon each other and the father was sexually acting out on the children. Appellant assisted LCCS in removing the children from their home on February 15, 2017. At that time, the children were found to be very dirty and they smelled of urine and other foul smells and they had bite marks on them, perhaps from bedbugs. The children were immediately placed in the temporary custody of appellant and remained in her care until March 31, 2017, when they were moved to separate foster homes. The children were eventually adjudicated to be dependent and neglected by their parents.

{¶ 14} As early as March 2, 2017, issues such as appellant's caregiving abilities, the children's school attendance, the fact that the children were still dirty, the lack of sufficient beds for appellant's own children, a broken washer and dryer, and mice in the home, had prompted the agency to consider a change in placement. The caseworker testified attempts to remedy some of the conditions had not resolved all of the issues. The children were later moved to several different foster homes due to their extremely unstable behavior. The second caseworker testified the children remained in counseling because of the traumatic experiences they reported. The caseworker did not investigate the disturbing statements because the children had already been removed and the parents were not cooperating with services. The caseworker believed the three children were adjusting pretty well to their foster homes and their basic needs were being met. They

8.

indicated they liked their home. A.B., who had to be removed to a separate home, was reported as doing well in his placement and in school, with a few areas of concern remaining, such as bedwetting.

{¶ 15} Another caseworker testified she had been involved with the children since April 2018, and had visited the children in their foster homes and during their visitations at LCCS with their mother. She believed the children were "flourishing" in their current placement because their behaviors had improved. Both foster parents had contacted her prior to the hearing and had no concerns, which was a change from the last visit with the previous caseworker at the beginning of the month. Both M.B. and A.B. were reported to have made significant improvement.

{¶ 16} Finally, a Department of Family Services supervisor testified she had conducted a home study after appellant filed her motion for legal custody. The supervisor found the home was clean but had very little furniture and the closets had no doors. While she did not find any hazards in the home, she denied the home study because of school attendance issues, the issues with compliance with J.M.'s custody order, the continued lack of beds for every child, the lack of toys or children's things, and minimal clothing found only in a laundry basket in the laundry room.

{¶ 17} Appellant testified that she had been involved with the children since their birth, assisting the mother in taking the children to doctor appointments, purchasing personal items for them, taking them to special activities, participated in daily activities with them, and establishing a relationship with them. Therefore, she desired to obtain

9.

legal custody of the children. Appellant also has four children of her own, aged 10, 9, 7, and 2, and legal custody of another relative's child, J.M., aged 12.

{¶ 18} Upon a review of the transcript, we find several areas of concern were presented at the disposition hearing regarding appellant's motion for legal custody. First, appellant testified that she had been employed by Genacross for eight months working with children with developmental disabilities and behaviors. However, she further testified that despite her special training to spot the types of allegations made in this case and the considerable amount of time she testified she had spent with the children and family, she never observed any of the allegations first raised in this case with respect to these four children.

{¶ 19} Second, there were significant issues raised regarding appellant's compliance with the custody order regarding J.M. Until J.M. was old enough to attend school, appellant testified, J.M. was only allowed to see her mother when appellant was present. However, despite the order of supervised visitation between J.M. and her mother, appellant admitted she later allowed J.M. to stay with her mother because appellant believed the mother had resolved the issues requiring removal of her children and her older children had been returned to her. Appellant asserted she had not sought a change in visitation order because she did not have the funds to do so.

{¶ 20} The DFS supervisor testified she investigated concerns arising from appellant's inconsistent statements about J.M.'s school attendance and learned appellant was not listed in the school records even as an emergency contact. Appellant testified

10.

that she had not enrolled J.M. in school because she did not have the necessary paperwork. The school also reported that the biological mother had called on April 16, 2018, to allow appellant to pick J.M. up from school, which was the day LCCS was interviewing all of the children regarding this case. Furthermore, the supervisor determined that J.M.'s dental records reflected only the biological mother's address. The supervisor contacted the biological mother who admitted that J.M. had always been living with the biological mother. Afterward, the supervisor was informed the biological mother reported J.M. spent time with appellant. The supervisor informed appellant a report of a questionable fraud would be made to the Job and Family Services regarding payments to appellant for J.M. because both the biological mother and appellant were indicating they had a shared placement arrangement.

{¶ 21} Fourth, concerns were raised with appellant's ability to get the older children to school on time. The initial caseworker testified that out of the 32 school days appellant had the children, A.B. was late 15 days and M.B. was late 14 days. The DFS supervisor testified she reviewed the school records regarding appellant's three school-aged children and found there were a substantial number of days during the prior school year that they had been tardy and many days that they had not attended at all. One child had 58 unexcused late arrivals, 8 unexcused absences; another had 57 unexcused late arrivals; another had 59 unexcused late arrivals for this school year.

{¶ 22} Appellant admitted she struggled with getting all of the children to school. She blamed the lack of clothing, a broken washer and dryer, and the lack of assistance or

11.

vouchers from LCCS.  However, appellant also testified she dropped some of the children off at school at 8:20 a.m. for the school breakfast provided at 8:45 a.m.  She believed the children played outside until the bell rang and then went to breakfast before heading to class, which resulted in their being marked as tardy.  She further testified she had been working with the school regarding her own children over the months prior to the hearing to eliminate their tardiness.

{¶ 23} Fifth, the DFS supervisor learned, after her denial of the home study, that there had been a neglect referral substantiated against appellant in September 2017.  Appellant admitted her youngest child had been found wandering in the neighborhood alone.  She asserted he had left the home of appellant's aunt during a family gathering, without appellant's knowledge, to visit a friend next door and became lost on his way home.

{¶ 24} On her behalf, appellant testified there were initially problems with the number of beds and she was unable to get help from LCCS, but at the time of the hearing she has room for the children and now has beds available for them.  However, she testified on cross-examination that her children do not sleep in their own beds and choose to sleep on the couch or in her room.  Appellant believed she is financially able to care for the children without the agency's help.  She testified that she recognized the special needs and disabilities of these children and felt confident to address their issues.  She also testified she would abide with court orders regarding visitation with the parents.

**{¶ 25}** Although she was on leave of absence at the time of the hearing, she testified she had been working eight-to-nine hours a day on a seven-days-on and six-days-off schedule. When she is working, the father of her children takes care of their children after school and returns them to her home in the evening until she returns home from work. She also testified that the father began to transport the children to school in late February. She testified the children at issue had a good relationship with the father of her children. She further testified that if she was given legal custody of these children:

> I wouldn't really want to work. Being that I want to put my full forth and effort into this. You know, like I have been in this field for over 6 years and I am, like, literally, you know, burned out to a certain extent. I done been from a house manager to running a day-hab. I am just lightweight burned out with this whole ordeal of working with the kids. I've been doing it for so many years.

**{¶ 26}** At the end of the hearing, the juvenile court noted that while it was clear that appellant had good intentions, it was also clear that appellant had been overwhelmed by the number of children, was unable to get the children to school on time, and had inadequate transportation and beds. Furthermore, the court found appellant's noncompliance with J.M.'s custody order was a significant concern since the court had ordered supervised visitation and appellant was either ignoring it, or the child was never removed from her parental home in the first place. Finally, the court noted concerns of regression for all of the children with a change in placement in light of the trauma they

13.

suffered from removal, their continuing special needs and behavioral issues, and the level of stabilization have they have achieved in their current foster homes.

{¶ 27} In its judgment entry, the juvenile court found concerns regarding the lack of supervision, attendance at school by the children involved in this action as well as appellant's own children, the cleanliness and adequacy of the home, and a failure to abide by court orders of supervised visitation regarding another child for which she has custody. Based on these concerns, the court found it would not be in the best interest of the children to award legal custody to appellant.

{¶ 28} On appeal, appellant first argues there was no evidence presented to substantiate a finding that the children at issue were unsupervised. We disagree. Appellant testified she left the children unsupervised for 20 minutes before school and, as a result, the children failed to participate in the free breakfast program on time which led to being late to class. Furthermore, appellant admitted her own two year old left a family gathering without her knowledge.

{¶ 29} Second, appellant argues there was no evidence presented to substantiate the finding that the tardiness at school was the result of appellant's actions. She contends that the children missed school because they had no clothing and LCCS did not provide her with any clothing or vouchers. The LCCS testimony regarding missed school related to appellant's own children, whom we presume would have had sufficient clothing. LCCS only presented evidence relating to the tardiness of the children at issue, which appellant testified was solely due to the fact that she dropped her kids off at school

14.

unattended. While appellant may have resolved the tardiness issue regarding her children shortly before trial, the matter of permanent placement of neglected, abused, and/or dependent children cannot be delayed while a potential custodian corrects parenting issues.

{¶ 30} Third, appellant argues there was no evidence presented to substantiate the finding that the home was unclean or inadequate. We agree that the DFS supervisor testified the home was clean and there were no safety hazards and, therefore, the finding of uncleanliness was not supported by the evidence. However the DFS supervisor also testified that she found there was a continued lack of beds for every child, the home was absent of toys, and only minimal clothing was found in a laundry basket in the laundry room. This evidence was enough to support a finding that the home was inadequate.

{¶ 31} Fourth, appellant argues there was no evidence to substantiate the finding that she was unreliable because she had not complied with court orders regarding the visitation of J.M. and she testified that she would comply with the court's orders regarding the children at issue. She argues the court failed to also consider that appellant cooperated with LCCS when they first took the children into shelter care and took custody of the children at that time despite the fact that she was engaged in moving to another home. Furthermore, appellant asserts the court did not consider the significant efforts appellant contributed to the treatment and care of the children.

{¶ 32} We find there was sufficient evidence to support the juvenile court's finding that not only did appellant disobey a court custody order regarding J.M., but she

15.

may never have actually taken physical custody of the child at all. No amount of assistance to LCCS in this case can override the fact that appellant deliberately disobeyed a court order designed to protect a child from harm.

{¶ 33} We also note that appellant fails to address the remaining best interest factors supporting the denial of her motion for legal custody. The children have finally begun to overcome the trauma of the parental home and their removal and the potential of regression is significant. Furthermore, appellant is a single mother who already has five young children in her home, three of whom have special needs, and she has expressed that she feels "burned out" from her job of working with disabled kids over the past six years. In conclusion, we find that there was a preponderance of evidence to support the juvenile court's finding that the best interest of the children weighed in favor of denying appellant legal custody of the children. Appellant's sole assignment of error is not well-taken.

{¶ 34} Having found that the juvenile court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Lucas County Court of Common Pleas, Juvenile Division is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.             _____

                                                    JUDGE

Arlene Singer, J.              

                                     _____

James D. Jensen, J.                                   JUDGE

CONCUR.

                                     _____

                                                   JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.