[Cite as *In re L.G.*, 2020-Ohio-3844.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

IN RE:

L.G.,

DEPENDENT CHILD.

[MOLLY B. - APPELLANT]

CASE NO. 13-19-52

O P I N I O N

IN RE:

C.G.,

DEPENDENT CHILD.

[MOLLY B. - APPELLANT]

CASE NO. 13-19-53

O P I N I O N

**Appeals from Seneca County Common Pleas Court
Juvenile Division
Trial Court Nos. 21650013 and 21650014**

**Judgments Affirmed**

**Date of Decision: July 27, 2020**

APPEARANCES:

*Michael R. Bassett* **for Appellant**

*Dean Henry* **for Appellee**

**SHAW, P.J.**

{¶1} Mother-appellant, Molly B. ("Molly"), brings these appeals from the November 19, 2019 judgments of the Seneca County Common Pleas Court, Juvenile Division, granting the motions to dismiss that had been filed by father-appellee, Dennis G. ("Dennis"). On appeal, Molly argues that the trial court erred by granting Dennis's motions to dismiss, that the trial court improperly placed a condition requiring Molly to progress in counseling before visitation would be modified, and that the trial court erred in finding Molly was not in compliance with its order.

*Background*

{¶2} Molly and Dennis were married in 2010. They had two children together: L.G., born in December of 2011, and C.G., born in September of 2013. In early 2016, Dennis filed for divorce in a separate proceeding.

{¶3} On April 14, 2016, complaints were filed in the Seneca County Common Pleas Court, Juvenile Division, by the Seneca County Department of Job and Family Services ("the Agency"), claiming that the children of Molly and Dennis were dependent pursuant to R.C. 2151.04(C). Prior to April 11, 2016, the Agency received sixteen claims that Dennis was sexually abusing the children—claims that Molly initially stated had been made to her by L.G.; however, after two children's services investigations—one by the Agency and one by a different agency in Iowa—and one criminal investigation by the Tiffin Police Department, no charges were

filed against Dennis. In fact, Dennis took a polygraph examination regarding the allegations and "passed." Conversely, Molly would not take a polygraph examination.[1] Aside from the abuse claims that Molly continued to believe, there were concerns regarding the children's environment, which included Molly potentially leading the children's answers with her questioning and creating a fearful environment for the children.

{¶4} Following the filing of the dependency complaints, the Juvenile Division took over jurisdiction with regard to the children from the domestic court that was handling the parents' divorce. Subsequently the children were removed from their parents' care and temporarily placed with a relative. A GAL was also appointed for the children.

{¶5} The complaints proceeded to an adjudication hearing in May of 2016 wherein the parents admitted that the children were dependent as alleged. At that time, the children remained in the temporary custody of a relative with the Agency having protective supervision. In addition, the parties were ordered to submit to forensic psychological evaluations.

{¶6} On July 1, 2016, the matters proceeded to disposition wherein the parties submitted an agreed recommendation for temporary custody to remain with the relative caring for the children with protective supervision provided by the

---

[1] There is an indication in the record that Molly did later take a polygraph examination but there is no indication as to what the results were.

Agency. As the psychological evaluations had not been completed yet, the parents were ordered to comply with the evaluations.

{¶7} The psychological evaluation of the parents was completed by Dr. Hustak and filed with the trial court under seal on October 12, 2016. The report was over 100 pages in length and detailed extensive analysis of, and interaction with, the parents and the children. Importantly, the report diagnosed Molly with a "Histrionic Personality Disorder." The report elaborated, stating, *inter alia*, that, "On a behavioral level, the histrionic person is over-reactive, volatile, and sometimes engaging." (Hustak Eval. at 58).

{¶8} Also of note, Dr. Hustak viewed video recordings Molly had made of Molly questioning the children about alleged abuse. Dr. Hustak stated that, "the dramatic way in which she [questioned] and the repetitive manner in which she solicited information from her children would suggest that she would persist until she got an answer that made much more sense to her, *even if it didn't make much sense to the child*. Molly sees this as *protecting her child* but she does not seem to understand that this could be interpreted as *leading a child*." (Emphasis sic) (Hustak Eval. at 52). Dr. Hustak found that Molly "reached conclusions based upon suspicions and not upon fact and she is very reactive to that." (*Id*. at 46). For example, despite Dennis never being violent she believed Dennis had been thinking about killing her.

{¶9} Moreover, Dr. Hustak noted that L.G. complained about her "pee" hurting even when she was with her temporary custodian, that the child had frequent urinary tract infections, and despite this Molly was still convinced that Dennis had abused the children because L.G. had similar problems when she was around Dennis (and Molly). Dr. Hustak's report indicated that Molly would need specific coaching about how not to reinforce L.G.'s fears.

{¶10} After Dr. Hustak's report was filed, the GAL filed a report that recommended Dennis be designated as residential and custodial parent of the children. The GAL also recommended, per Dr. Hustak's evaluation, that Molly engage in therapy as specified in the case plan that had been filed. The case plan detailed at least seven areas for Molly to work in through therapy.

{¶11} On November 23, 2016, Dennis filed a motion to be designated as legal custodian and he requested a hearing on the matter.

{¶12} On December 1, 2016, Molly filed her own motion to be designated as legal custodian and for a dispositional modification hearing.

{¶13} A hearing was held regarding a dispositional modification in December of 2016. At that hearing, the parties represented to the trial court that an agreement had been reached wherein Dennis would be awarded legal custody of the children with Molly having supervised visitation with the children. All visitation between Molly and the children would be supervised in person or monitored until

March 14, 2017. Once that date was reached, unless an objection was filed, visitation would be unsupervised. In addition, Molly was ordered to enter counseling with a goal to craft a treatment plan consistent with the recommendations of Dr. Hustak in his evaluation. Counselors were to provide progress reports and detail Molly's adherence to the treatment plan.

{¶14} On March 6, 2017, Dennis and the Agency filed a motion objecting to Molly receiving unsupervised parenting time alleging, *inter alia*, that rather than work on her issues in therapy, Molly was attempting to use her counselor to challenge Dr. Hustak's findings in his evaluation. Subsequently the trial court stayed Molly's unsupervised visitation.

{¶15} On March 16, 2017, Molly's original attorneys filed motions to withdraw contending that Molly had refused to follow legal advice and had become combative. That motion was granted.

{¶16} On July 6, 2017, the trial court held a hearing on the objections filed by Dennis and the Agency to Molly receiving unsupervised visitation. Ultimately Molly's visits remained supervised as previously ordered. The trial court noted issues such as Molly seeing an unapproved therapist who did not appear to be creating a treatment plan consistent with what had been ordered by the trial court. The trial court also noted that the therapist should not be used for the purposes of challenging the findings of Dr. Hustak's evaluation; rather, the therapist should be

used for the purposes of addressing the issues that had already been determined and defined.

{¶17} On October 3, 2017, the GAL filed a supplemental report recommending that Dennis remain the primary residential and custodial parent. "This [GAL] believes that [Molly] should have no contact with the children until both her therapy and [L.G.']'s therapy indicate that it would be more appropriate and less harmful [than] the contact that currently exists between [Molly] and her two girls." (Doc. No. 84).[2]

{¶18} On October 5, 2017, Molly's new attorney moved to withdraw as counsel of record due to a breakdown of the attorney/client relationship.

{¶19} A review hearing was held October 11, 2017, though Molly appeared an hour late after the Agency went to her home to get her. Molly claimed that she thought the hearing started later. After the issues Molly was having with her current attorney were discussed, Molly's counsel was permitted to withdraw and the matter was continued so Molly could secure new legal counsel.

{¶20} The review hearing resumed on December 7, 2017. At that hearing the trial court terminated the Agency's protective supervision; however, the previously ordered treatment plan remained as a condition for any motions by Molly for unsupervised visitation. (Doc. No. 95).

---

[2] The docket filings are largely identical but the numbering is slightly different. We have used the document numbers from trial court case 21650013, corresponding to appellate number 13-19-52.

{¶21} The next relevant filing in these cases for purposes of appeal occurred over a year later, on February 28, 2019, when Molly filed "Motion[s] to Award Mother Standard Local Visitation."

{¶22} On April 16, 2019, the trial court held a pretrial hearing on Molly's motions, ordering Patchworks House, which had been supervising Molly's visitation, to prepare a summary of the supervised visitations since its last report to the trial court. In addition, the trial court stated, "In order to determine compliance with the prior orders of this Court, Mother, Molly * * * is to provide executed Releases of Information in favor of the Court, the [GAL] (if applicable), and counsel of record for each and every mental health/counseling provider with whom she has treated or been referred since August 12, 2016." (Doc. No. 114). An entry on the matter was filed May 3, 2019.

{¶23} On June 5, 2019, another pretrial was held wherein "[n]umerous threshold issues were discussed." (Doc. No. 121). The issues included anticipated discovery requests to determine if Molly had met the provisions of the previously filed judgment entries for modification of her supervised visitation. The trial court ordered any discovery requests to be made and responded to within thirty days. Dennis made his discovery request on June 7, 2019.

{¶24} On August 9, 2019, Dennis filed "Motions to Dismiss" Molly's pending motions to modify visitation because Molly had failed to provide discovery

as ordered by the trial court even though over two months had passed since the request.

{¶25} On August 12, 2019, the trial court held another pretrial hearing wherein it heard arguments regarding the motions to dismiss filed by Dennis. Following the arguments, the trial court ordered Molly to supply evidence of compliance and/or completion of the previously ordered treatment plan within fourteen days by way of affidavit, supported by certification from a treatment provider that was familiar with Dr. Hustak's report and recommendations. The GAL noted at this hearing "that it was not in the best interest of the children to expose them to the interview and evaluation process which would be required for the Court to consider the Mother[']s Motion for unsupervised visits unless and until Mother has demonstrated her compliance with the recommendations of Dr. Hustak and this Court[']s previous Orders." (Doc. No. 127).[3]

{¶26} On August 26, 2019, Molly filed memorandums in opposition to Dennis's motions to dismiss. She argued that she had made good faith efforts to comply with the treatment plan but could not achieve joint counseling due to "Father's Intransigence." (Doc. 126). She attached five copies of progress reports from therapy, though only three specifically dealt with her, dated September 7,

---

[3] The trial court summarized this exchange in a later-filed judgment entry.

-9-

2017; November 2, 2017; and November 21, 2017.[4] Nothing was presented from 2018.

{¶27} On November 19, 2019, the trial court filed judgment entries granting Dennis's motions to dismiss. The trial court provided a brief overview of the history of the matter, including a prior GAL report wherein the GAL and Dr. Hustak discussed Molly's "poor parenting interactions, which continue to promote fear and anxiety and the idea that the children are not safe, [which] is extremely detrimental to the children." (Doc. No. 127). The trial court then reviewed the motions to dismiss, the responses to them, and determined as follows.

> **Mother filed a Memorandum in Opposition to Motion to Dismiss on August 26, 2019. The Memorandum as filed included New Transitions Counseling Progress notes as evidence that L.G. was progressing and doing well with her visits with her mother. Mother further argued that Father was resisting a combined counseling session citing the progress notes that "Dennis is apprehensive" in response to discussion about combined session. (progress note 1-4-17) The Court notes in reviewing the progress notes as they relate to Molly the clinician checked the box Slight Improvement (progress note 9-7-17) and Little or No Improvement (progress note 11-2-17). The memorandum did not include any affidavit, or certification for a treatment provider that is familiar with Dr. Hustak's report, that Mother has completed or complied with the court[']s previously ordered treatment plan. While it is apparent that the child L.G. is making progress, the Court has no evidence to determine mother[']s progress, compliance or completion of any treatment plan intended to help her with the cognitive restructuring necessary in learning how to relate to her children in a manner that is not detrimental to them.**

---

[4] She attached two reports related to L.G. as well.

> **Accordingly, since the Court[’]s previous Orders of March 3, 2017 and January 2, 2018 said such treatment was a condition for any motions for unsupervised visitation, the Court Finds that it would not be in the children's best interest to allow this matter to proceed until Mother has demonstrated compliance with the Court[’]s previously ordered treatment plan. The father's Motion to Dismiss is Therefore GRANTED.**

(Doc. No. 127). It is from these judgments dismissing Molly's motions that Molly appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court denied appellant due process of law in dismissing her motion for modification of visitation without a hearing.**

**Assignment of Error No. 2**
**The trial court inappropriately interposed a condition upon appellant requiring counseling to take place before her motion would be considered.**

**Assignment of Error No. 3**
**The trial court erred in finding appellant in noncompliance with the treatment plan.**

*First Assignment of Error*

{¶28} In her first assignment of error, Molly argues that the trial court deprived her of due process by dismissing her motions for modification of visitation "without a hearing." We disagree.

{¶29} "The fundamental requirement of due process is the opportunity to be heard " 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902 (1976), quoting *Armstrong v. Manzo*, 380 U.S.

-11-

545, 552, 85 S.Ct. 1187, 1191 (1965).  It is important to emphasize that for due process compliance a hearing is not necessarily required; rather it is the opportunity to be heard.  *See, e.g.*, *Board of Trumbull Township Trustees v. Rickard*, 11th Dist. Ashtabula Nos. 2016-A-0044-45, 2017-Ohio-8143, ¶ 60.

**{¶30}** At the outset of our analysis in this case, we note that the trial court has had years of experience dealing with these parties in this litigation.  The previous final judgment of the trial court awarded legal custody to Dennis with Molly having supervised visitation.  As a condition of having supervised visitation removed, Molly had to progress through therapy that addressed her issues as identified by Dr. Hustak in his evaluation.  Thus when Molly filed for a motion to modify visitation, and Dennis made a request for discovery related to Molly's progress in therapy, the trial court ordered Molly to comply and provide evidence.

**{¶31}** The trial court then held *multiple* pretrial hearings addressing potential evidence that would be produced or would need to be produced, at which times Molly was able to be heard.  Nevertheless, after Dennis made his request for discovery, Molly did not comply with the trial court's discovery order.  Dennis then filed his motions to dismiss Molly's motions for modification and only *at that time*, after another hearing, did Molly respond and attach a total of five progress reports to her memorandum in response, only three of which were related to her.  Further, all three of those reports were from 2017—there was nothing in 2018 and nothing

from anyone who claimed to be familiar with Dr. Hustak's report and recommendations.

**{¶32}** Under these circumstances, we fail to see how Molly was deprived of "due process" when she was repeatedly provided notice and an *opportunity* to be heard. When she filed her motion, multiple pretrial hearings were held where she was present and able to discuss the issues. She was then specifically notified that she needed to comply with the discovery request regarding her therapy progress and rather than respond to that request, she allowed the trial court's deadline to lapse. Only after Dennis filed motions to dismiss did she bother to respond at all, with no actual evidentiary documentation. Instead of assembling her documentation and presenting it to the trial court, or proceeding through therapy to acquire the documentation if she did not have it, she filed an appeal with this Court seeking us to determine that the trial court deprived her of due process. However, it is only through Molly's own lack of diligence that this case did not proceed further.

**{¶33}** In sum, Molly repeatedly received notice of the proceedings and consistently had opportunities to be heard. She rejected those opportunities and we will not save her from herself on appeal. Therefore, her first assignment of error is overruled.

*Second Assignment of Error*

**{¶34}** In Molly's second assignment of error, she argues that the trial court erred by requiring her to attend counseling before her motion to modify would be considered. Notably, Molly cites no legal authority to support her position that the trial court erred and we could disregard it or overrule it for this reason alone. *See, e.g.*, *Huffer v. Brown*, 10th Dist. Franklin No. 12AP-1086, 2013-Ohio-4384, ¶ 12. However, we will proceed to address the argument that is made.

**{¶35}** "The juvenile court retains the authority to grant, limit, or eliminate visitation rights with respect to a child when crafting the final disposition of a case." *Matter of X.G.*, 5th Dist. Tuscarawas No. 2018 AP 04 0015, 2018-Ohio-4890, ¶ 27. In order to further a child's best interest, the trial court has the discretion to limit or restrict visitation rights. *Hurst v. Hurst*, 5th Dist. Licking No. 12-CA-70, 2013-Ohio-2674. "This includes the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place, and to deny visitation rights altogether if visitation would not be in the best interest of the child." *Jannetti v. Nichol*, 7th Dist. Mahoning No. 97-CA-239, 2000 WL 652540 (May 12, 2000).

**{¶36}** As Dennis argues in his brief to this Court, "[t]he connection between visitation and Molly B[.]'s compliance with the treatment plan and counseling is amply demonstrated in the record." (Appe.'s Br. at 11). Dennis contends that they

are "inextricably linked to the best interests of the children." (*Id.*) After reviewing the record, we agree.

{¶37} Molly initially agreed to supervised visitation and the entry implementing that visitation, and designating Dennis as legal custodian, required Molly to attend counseling. She was specifically directed to address the concerns proposed by Dr. Hustak before she could modify her visitation. Given that Molly's issues were a large part of what caused issues in this case, particularly per Dr. Hustak's report, we cannot find that the trial court erred by requiring Molly to seek counseling before being awarded further visitation. Dr. Hustak's report, and the GAL as well, were concerned that Molly's interaction with the children could be harming them mentally and that she needed to learn how to appropriately interact with her children. On the facts before us, and with Molly citing no legal authority to the contrary, we cannot find that the trial court erred. Therefore her second assignment of error is overruled.

*Third Assignment of Error*

{¶38} In Molly's third assignment of error, she argues that the trial court erred by finding that she was not in compliance with the treatment plan. In support, she cites the progress notes that had been attached to the motion to dismiss, the latest of which was dated in November of 2017, well over a year before Molly made her motion.

{¶39} Again, it is not just that Molly apparently failed to comply with her treatment plan in this case, it is also that Molly failed to provide any evidence that she was attending treatment at all beyond November of 2017. The trial court specifically listed types of evidence Molly could produce to establish her compliance and she produced none of what the trial court listed. *See generally*, *In re: A.B.,* 6th Dist. Lucas No. L-18-1136, 2018-Ohio-4206 (discussing evidence supporting finding o noncompliance with juvenile court orders). On the basis of the record before us, we cannot find that the trial court erred. Therefore, Molly's third assignment of error is overruled.

## *Conclusion*

{¶40} For the foregoing reasons Molly's assignments of error are overruled and the judgments of the Seneca County Common Pleas Court, Juvenile Division, are affirmed.

***Judgments Affirmed***

**PRESTON and ZIMMERMAN, J.J., concur.**

**/jlr**