[Cite as *In re J.T.*, 2020-Ohio-4246.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

In re J.T., A.T.

Court of Appeals Nos. OT-19-036
OT-19-046

Trial Court No. 2018-JUV-138
2018-JUV-139

**DECISION AND JUDGMENT**

Decided: August 28, 2020

* * * * *

Angelina Wagner, for appellant.

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Dina Shenker, Assistant Prosecuting Attorney, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} In this consolidated appeal, mother-appellant, P.R., appeals the judgment of

the Ottawa County Court of Common Pleas, Juvenile Division, awarding legal custody of

her children, J.T. and A.T., to D.B.  For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} Appellant is the mother of four children. Ja.T. is the father of J.T. and A.T., and Ga.R. is the father of C.R. and G.R.[1] On March 20, 2018, the children were removed from mother's care and placed into the temporary custody of the Ottawa County Department of Job and Family Services ("OCDJFS"). On April 17, 2018, the children were adjudicated to be neglected and dependent children. Case plan services were provided to mother and Ga.R., with whom she was living. Ja.T. was incarcerated through the pendency of the case.

{¶ 3} On February 21, 2019, OCDJFS moved for permanent custody of C.R. and G.R., and for legal custody of J.T. and A.T. to be given to D.B. A.R., the maternal grandfather, later filed a motion for legal custody of all four children. A trial on all of the motions for custody was held on June 24 and July 29, 2019.

{¶ 4} At the trial, Betsy Gordon, a social service worker at OCDJFS, testified that the agency received a series of reports beginning in November 2017 that the children were being neglected, and that they were exposed to drugs and domestic violence in the home. Upon investigation, mother and Ga.R. admitted to marijuana use, and later refused drug screens. Mother also suffered a broken shoulder, and the children reported that Ga.R. hit mother and threw her into the wall.

---

[1] This appeal concerns only the award of legal custody of J.T. and A.T. Thus, our recitation of the facts will focus on those children.

2.

{¶ 5} Gordon also testified that the allegations of neglect were substantiated in that J.T., who at six years old was the oldest child, was performing the functions of a parent. J.T. would wake herself and her little sister in the morning and cook breakfast for them. She would then tidy up after breakfast before getting herself ready and going to school. When she returned from school, she would watch all of her younger siblings while her parents slept.

{¶ 6} Regarding the conditions of the home, Gordon testified that the house was not in bad condition at first, but by March 2018, there was a cockroach infestation. Cockroaches were falling out of the cupboards and off of the shelves in the kitchen, there were dead cockroaches in the refrigerator, and there were cockroaches in the living room, hallway, and the children's bedrooms.

{¶ 7} As a result of OCDJFS's involvement, mother and Ga.R. voluntarily placed J.T. and A.T. with another relative, H.L., and C.R. and G.R. were placed with the maternal grandmother. However, on March 20, 2018, OCDJFS filed an ex parte motion for emergency custody of the children over fears that mother and Ga.R. were fleeing with the children to Florida.

{¶ 8} Connie North, the ongoing caseworker for the children at OCDJFS, testified that following the grant of emergency custody, J.T. and A.T. continued in the care of H.L.

{¶ 9} Over the next several months, A.R., the maternal grandfather, would have all four children at his home for day visitation. Those visitations progressed to overnight

3.

visitations. During that time, North expressed some concerns that A.R. was not requiring C.R. to wear her glasses even though it was recommended that she wear them at all times. Further, North expressed a concern that A.R. left the infant G.R. in his car seat on the beach while A.R. went into the water with C.R. Also, North was concerned that C.R.'s bed was in the family room next to the big screen television, hampering her ability to sleep well, and A.R. refused to move the bed into the bedroom with J.T.

{¶ 10} Visitations with A.R. stopped on July 27, 2018, when the foster parent noticed bruising on G.R. after an overnight visitation. Shortly thereafter, the bruising was found to be a type of birthmark, but regular visitation was never reestablished. From July 2018 until February 2019, A.R. did not have individual visitation with the children, but would instead occasionally accompany mother to supervised visitations at Joyful Connections. A.R. also saw the children around the holidays at family gatherings. North asked A.R. to complete an intake form at Joyful Connections so that he could have individual visitations with the children, but he refused to do so until February 2019.

{¶ 11} North testified that D.B. has had a long-term relationship with the paternal grandfather of J.T. and A.T., and has been a grandmother figure to the children. According to North, D.B. has been the main person to transport the children to doctor's appointments, even when they were placed with H.L. D.B. and the paternal grandfather have gone on vacations with the children, and have had them for weekend visits often.

{¶ 12} Throughout the case, D.B. has conveyed to North that she would be interested in caring for J.T. and A.T. if the children ever needed a place to live. On

4.

March 30, 2019, H.L. contacted North and informed her that she was no longer able to care for the children, so J.T. and A.T. were placed with D.B. Both mother and Ja.T. supported placement of the children with D.B., although mother expressed her desire that all four of her children stay together.

{¶ 13} North testified that she believes D.B. is the most appropriate person to care for J.T. and A.T. because D.B. has been involved in their lives since they were young. Even through the placement process, D.B. has been active in their school activities, and has been transporting them from her home in Perrysburg, Ohio, so that they could finish the school year at Port Clinton City Schools. If awarded custody, D.B. would transfer the children to Lake School District. North also testified that D.B. is willing to maintain the children's relationships with other family members. To that end, D.B. has hosted holiday family gatherings including mother, A.R., Ga.R., and Ga.R.'s family members. D.B. has also been in contact with C.R. and G.R.'s foster parents to plan activities together over the summer.

{¶ 14} Kay Washington, the court appointed special advocate, testified that she has observed the children on a number of different occasions. Washington stated that the children were happy with H.L., and expressed their desire to stay with her, but after they were placed with D.B., Washington noticed that the children seemed very comfortable, and appeared calmer than Washington had seen them for a long time. Washington also was impressed at how well the children did at school even though they changed placements in the middle of the year, and Washington credits that success in part to

5.

D.B.'s willingness to transport them the long distance so that they could finish the year in the same school.

{¶ 15} Regarding A.R., Washington testified that he was very laid back and easy going, and had a kind heart, but that he was not overly receptive to changing his behavior in regards to the children based on her suggestions. Washington also testified that recently she stopped at A.R.'s house for an unannounced visit and mother was present at the house with a number of her friends. Washington speculated that there was either drug or alcohol use that was going on that day because mother's eyes "were very wide and very kind of glazed and dilated."

{¶ 16} Washington concluded by stating that it was her opinion that placement with D.B. was in the best interests of J.T. and A.T.

{¶ 17} A.R. also testified at the hearing. In addition, his testimony from a prior hearing on his motion to intervene, which was held on April 12, 2019, was included in the record. A.R. testified that he has a very good relationship with all four children, and that the children are affectionate with him. A.R. has been a part of the children's lives, and has watched them and transported them to school and appointments on occasion. A.R. testified that he does not see a problem having all four children, and he understands that it would be a long-term arrangement.

{¶ 18} The final witness to testify was D.B. D.B. testified that she has been in a long-term, committed relationship with the children's paternal grandfather, and that the children view her as their grandmother. Although the paternal grandfather does not

6.

reside with D.B., he is over frequently. D.B. stated that she has been a big part of the children's lives, and that she has had them most weekends. D.B. also explained her intentions and efforts to continue the relationship between all four of mother's children, and stated how she has become friends with the foster mom and they have made plans for the children to be together. Finally, D.B. also described how she has worked to continue the relationship between the children and the parents by having J.T. and A.T. call mother almost every night, by hosting family holiday celebrations, and even by contacting the prison warden so that the children could visit Ja.T.

{¶ 19} Following the hearing, the trial court took the matter under advisement. On August 16, 2019, the trial court entered its judgment awarding legal custody of J.T. and A.T. to D.B.

## II. Assignment of Error

{¶ 20} Mother has timely appealed the August 16, 2019 judgment entry, and now asserts one assignment of error for our review:

1. The trial court abused its discretion in failing to take into consideration the wishes of the children when determining that the award of legal custody was in their best interest.

## III. Analysis

{¶ 21} We review the trial court's dispositional award for an abuse of discretion. *In re A.B.*, 2018-Ohio-4206, 114 N.E.3d 421, ¶ 12 (6th Dist.). An abuse of discretion

7.

connotes that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 22} "When an agency moves for legal custody pursuant to R.C. 2151.415(A)(3), the juvenile court must base its order of disposition upon 'the best interest of the child as supported by the evidence presented at the dispositional hearing.'" *In re A.B.* at ¶ 10, quoting R.C. 2151.415(B).

> In dispositional hearings involving motions for legal custody by nonparents, appellate courts have often held that the juvenile court must consider the best interest factors of either R.C. 2151.414(D) (applicable only to motions of an agency for permanent custody or a permanent living arrangement) or R.C. 3109.04(F) (as applied to custody disputes arising outside the domestic relations domain as habeas corpus actions or R.C. 2151.23(A)(2) actions between parents and nonparents) under a preponderance of the evidence standard. *In re G.M.*, [8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090,] ¶ 15 (citations omitted); *In re B.H., P.H.*, 6th Dist. Lucas Nos. L-17-1126, L-17-1127, 2018-Ohio-1238, ¶ 29; *In re K.V.*, 6th Dist. Lucas No. L-11-1087, 2012-Ohio-190, ¶ 19. However, the General Assembly did not specify the factors to be considered for legal custody as it did for other dispositional orders. The absence of a specific requirement to consider statutory factors of best interest may be due to the fact that legal custody is not as extreme as an award of permanent custody.

8.

> *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 17.
>
> Therefore, we must presume the juvenile court is free to consider any best
> interest factors it deems appropriate. *In re G.M.* at ¶ 15-16. Furthermore,
> those findings must be supported by a preponderance of the evidence
> admitted at the dispositional hearing. *In re B.L.*, 6th Dist. Lucas No.
> L-15-1030, 2016-Ohio-738, ¶ 7.

*Id.* at ¶ 11.

{¶ 23} In support of her assignment of error, mother argues that the trial court abused its discretion by not considering the wishes of the children as expressed in an in-camera interview that was conducted on July 29, 2019. Mother contends that R.C. 3109.04(F)(1)(b) requires the trial court to consider those wishes, but the August 16, 2019 judgment entry does not reference the children's wishes or note that the children's wishes were considered. Thus, mother concludes that the trial court's award of legal custody was an abuse of discretion. We disagree.

{¶ 24} First, as noted above, although courts often look to R.C. 3109.04(F) for guidance, those factors are not required for a "best interest" analysis under R.C. 2151.415(A)(3) and (B).

{¶ 25} Second, by conducting an in-camera interview, the trial court demonstrated that it considered the wishes of the children, whatever those may be. Nothing in R.C. 3109.04(F)—or R.C. 2151.414(D)—requires the trial court to comply with the children's wishes.

9.

**{¶ 26}** Finally, there is ample evidence in the record that an award of legal custody to D.B. is in the children's best interest. D.B. has been involved in the children's lives since birth. Prior to OCDJFS's involvement, D.B. cared for them and spent many weekends together with them. After OCDJFS became involved, D.B. took the children to all of their appointments, and offered her home as a placement for the children. D.B. sacrificed by transporting the children so that they could finish the school year in Port Clinton Schools. D.B. has proven to be a stable and loving presence in the children's lives, and the children feel very comfortable with her. D.B. has also demonstrated a willingness and desire to allow the children to maintain their relationships with their parents, siblings, and other relatives such as A.R. Therefore, we hold that the trial court's decision to award legal custody of J.T. and A.T. to D.B. is supported by the evidence and is not an abuse of discretion.

**{¶ 27}** Accordingly, mother's assignment of error is not well-taken.

## IV. Conclusion

**{¶ 28}** For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Ottawa County Court of Common Pleas, Juvenile Division, is affirmed. Mother is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.